UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JUSTIN GUECI, on behalf of himself,
FLSA Collective Plaintiffs and the Class Members,

                                 Plaintiffs,                    Docket No.: 22-cv-6343

        -against-                          VERIFIED FLSA
                                                   COLLECTIVE
                                                     ACTION COMPLAINT

ALTAIRE PHARMACEUTICALS, INC., TERRY SAWAYA,
MICHAEL SAWAYA, and ASSAD S. SAWAYA

                                Defendants.

------------------------------------------------------------------------X

       Plaintiff JUSTIN GUECI (hereinafter, "Plaintiff" or "GUECI"), on behalf of himself and other similarly situated employees, by and through his undersigned attorneys, PERVEZ & REHMAN, P.C., files this Complaint against Defendant ALTAIRE PHARMACEUTICALS (hereinafter, "Corporate Defendant" or "ALTAIRE"), TERRY SAWAYA, MICHAEL SAWAYA, and ASSAD S. SAWAYA (hereinafter, "Individual Defendants" or "Defendants"), and states as follows:

## <u>INTRODUCTION</u>

1. Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, et. Seq. ("FLSA"), he is entitled to recover from the Defendants: (1) unpaid wages; (2) unpaid overtime compensation; (3) unpaid minimum wages (4) liquidated damages; (5) prejudgment and post-judgment interest; and (6) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law, he is entitled to recover from the Defendants: (1) unpaid wages; (2) unpaid overtime compensation; (3) unpaid "spread

of hours" premium for each day they worked in excess of ten (10) hours; (4) unpaid minimum wage; (5) damages for failure to issue accurate wage statements; (6) damages for failure to issue wage theft notice, (7) damages for retaliation (8) civil and statutory penalties (9) liquidated damages; (10) prejudgment and post-judgment interest; and (11) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff state law claims pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

**Plaintiff**

5.  Plaintiff GUECI is a resident of Suffolk County, New York.

6.  Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

**Corporate Defendant**

7.  Defendant, ALTAIRE is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 311 West Lane, Aquebogue, NY 11901.

8.  At all relevant times, ALTAIRE is, and continue to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) have and have had employees engaged in

commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) have and have had an annual gross volume of sales of not less than $500,000.

9. Defendant employed Plaintiff, in Suffolk County, New York, to work as Clean Room Mechanic.

10. The work performed by Plaintiff was directly essential to the business operated by Defendants.

11. Defendant knowingly and willfully failed to pay Plaintiff wages and his lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

12. Defendant knowingly and willfully failed to pay Plaintiff minimum wage for hours worked above forty (40), in direct contravention of the FLSA and New York Labor Law.

13. Defendant knowingly and willfully failed to pay Plaintiff his lawfully earned "spread of hours" premium for hours worked above ten (10) in direct contravention of the New York Labor Law.

14. Defendant knowingly and willingly terminated Plaintiff on July 28, 2022, after he made numerous internal complaints in good faith about violations posing a substantial and specific danger to public health and safety and refused to partake, contravening whistleblower protection afforded by § 740 of New York Labor Law.

**Individual Defendants**

15. Terry Sawaya, Michael Sawaya, and Assad S. Sawaya are family members who jointly own and operate ALTAIRE currently.

16. Assad S. Sawaya ("Al") is the President of ALTAIRE, husband of Terry Sawaya and father of Micahel Sawaya.

17. Teresa  Sawaya ("Terry") is the Chief Executive Officer at ALTAIRE, wife of Assad S. Sawaya, and mother of Michael Sawaya.

18. Michael Sawaya ("Michael") is General Counsel at ALTAIRE and son of Terry and Assad S. Sawaya.

## STATEMENT OF FACTS

**Wage and Hour Violations**

19. Throughout all times relevant to this action, Defendants hired employees to work in the facility and to participate in the day-to-day operation of Defendants.

20. Defendant employed Plaintiff in Suffolk County, New York, to work as a Clean Room Mechanic on or about September 25, 2017.

21. Plaintiff's duties included repairing, maintaining, working on machines, and working in the "clean room."

22. Plaintiff worked under the direct supervision of John Tripk ("Tripk") until May 2022, and Richard Kahn ("Kahn") from May 2022 onwards. He also reported to Individual Defendants throughout the course of his employment.

23. Plaintiff worked more than forty hours per week during the entirety of his employment as a Clean Room Mechanic.

24. For the first few months of his employment, Plaintiff worked approximate forty-eight (48) hours per week.

25. Plaintiff was told he would be paid as an hourly employee when he was hired. However, in or around October 2017, when he received his first check, he was improperly reclassified as "exempt" and paid as a salaried employee.

26. After being classified as exempt, Plaintiff was told that he would have to work Saturdays and often stay late due to short staffing.

27. Along with the duties described above, he was also assigned additional tasks like mowing the lawn, tarring the roof, spraying the lawn with pesticides, providing boiler maintenance, and shoveling different facilities, which exceeded the scope of his job description.

28. For example, if the second shift manger or mechanic did not show up to work, or if Defendants needed someone to fill in on the production line, Plaintiff would have to work additional hours. Plaintiff also often worked double shifts in one day.

29. After working for a few months, Plaintiff began working approximately sixty (60) hours per week and at times more.

30. Plaintiff often worked six (6) days a week included Monday through Friday and some Saturdays. His shift ranged from 5/6:00 a.m. to 3:30 p.m. and some days to 5:30 p.m., or from 3:00 p.m. to 11:30 p.m.

31. Often, after his shift ended, he was given extra tasks to complete such as retrieving items for the Company from Hauppauge using his own car and fuel, tar the roof without safety gear, or cleaning the Individual Defendants' rental car, and was not compensated for this time.

32. Plaintiff did not receive an uninterrupted lunch break.

33. Plaintiff was told not to clock in or out after he was reclassified. Rather, he was just required to sign a sign-in sheet, but this rarely contained accurate time records.

34. Upon information and belief, Defendants did not have a punch in/out clock for salaried employees.

35. During the week of March 18, 2019, to March 23, 2019, Plaintiff was scheduled to come in everyday from 1:00 p.m. to 11:30 p.m. He was required to cover for another mechanic who was out on vacation.

36. During this week, Plaintiff worked approximately sixty hours (60) and was not paid overtime.

37. On Friday, March 22, 2019, Plaintiff arrived at work at 1:00 p.m. and at around 4:30 p.m., suffered a work-related injury. His manager, John Tripk told him to go to receive medical care. Accordingly, Plaintiff left work to go to City MD in Riverhead, NY for medical treatment for his injury.

38. Plaintiff was docked pay for leaving early. Defendants deducted $125 from his paycheck because he left early to get his work-related injury treated, pursuant to the direction of his manager, John Tripk.

39. During the course of Plaintiff's employment, Defendants paid him a salary of $1250.00 per week.

40. There are non-exempt hourly employees who also work as Clean Room Mechanics, but they are paid hourly, despite having identical job duties to Plaintiffs, aside from the ancillary tasks he was required to perform. However, non-salaried Clean Room Mechanics are not required to work as many hours as Plaintiff.

41. During the entirety of Plaintiff's employment, he was taken advantage of by Defendants and not paid overtime compensation. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half, as required by state and federal law.

42. Plaintiff was not paid on time or for all hours worked.

43. In addition to unpaid wages and overtime accrued throughout the course of his employment, Plaintiff was not paid for his last three full days of work on July 20, 21, and 22, 2022.

44. Moreover, Defendants did not comply with the NYLL's wage statement. wage notice and wage theft notice provisions. Defendants did not issue accurate wage notices, statements or wage theft notices to employees as required by law. Defendants are liable for damages for each employee pursuant to NYLL § 198.

45. Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned "spread of hours" premium for hours worked above ten (10) in direct contravention of the New York Labor Law.

46. Defendants knowingly and willingly failed to pay Plaintiff minimum wages for hours worked above forty (40), in contravention of the FLSA and NYLL.

**Whistleblowing Violations**

47. Several times a year, Plaintiff was instructed to spray pesticides and weed killer across the facility grounds without proper personal protective equipment (PPE). His requests for PPE were denied. Plaintiff does not have any certification, license, or training in chemical spraying, contravening prerequisites prescribed by the Occupational Safety and Health Administration (OSHA).

48. When dealing with dangerous machinery, Plaintiff was not provided proper PPE to complete tasks within the scope of his job duties, like compounding. His requests for PPE were denied.

49. On more than one occasion starting from his second week of employment, Plaintiff was told to crawl into a small boiler space to clean without proper PPE or training; a task which exceeded the scope of his employment and contravenes OSHA requirements.

50. On July 19, 2022, Plaintiff was instructed to tar the roof without PPE or safety gear. Due to the heat, Plaintiff almost passed out and suffered heat stroke, and had to leave work. He was not qualified or licensed to perform this work, yet nevertheless, it was required of him.

51. Throughout the course of his employment, Plaintiff complained to Individual Defendants and his supervisors on multiple occasions about his obligation to perform of tasks, like those mentioned in Nos. 47-50, that he was not qualified to perform, and which exceeded the scope of his job description. Defendants dismissed these complaints.

52. On at least ten different occasions throughout the duration of Plaintiff's employment, Plaintiff brought to Individual Defendants' attention their noncompliance with "lock-out-tag-out" safety protocols when disabling machinery without proper equipment or recording these entries in a logbook as prescribed by OSHA, which they continued to disregard.

53. On multiple occasions throughout Plaintiff's employment, Plaintiff brought to Individual Defendants' attention their noncompliance with Department of Environmental Conservation (DEC) and Environmental Protection Agency (EPA) protocols relating to toxic-dumping, handling, and storage practices, to which they responded with harassment and accused Plaintiff of reporting them to OSHA.

54. On or around March of 2022, Plaintiff was discharged from the Metrology Department after refusing to falsify reports to be reviewed by the Food and Drug Administration (FDA), pertaining to the recertification and validation of clean room equipment used to test ALTAIRE's products. Following his refusal, Individual Defendants confiscated Plaintiff's keys and changed the locks on the building.

55. Plaintiff noticed a camera in the boiler room on June 8, and thought it was strange, so he marked the bottom with a marker. That same day, Plaintiff was approached by the Head of Metrology and told to not interfere with the camera's feed as Individual Defendants had intentionally placed it there.

56. On or about July 18, 2022, Plaintiff found the same camera in the women's restroom while he was repairing bathroom tiles. The camera was pointed and lodged in a hole between tiles above one of the women's stalls.

57. Plaintiff confirmed this camera was the same one Individual Defendants placed in the boiler room on June 8, as it still bore Plaintiff's mark on the bottom.

58. Plaintiff notified his immediate supervisor and was terminated a week later.

59. Individual Defendants' placement of a video camera recording device in the women's restroom constitutes a violation of NY CLS General Business Law § 395-b(2)(a), posing a substantial and inexcusable danger to the safety and wellbeing of internal employees using the facility.

60. The violations of these laws, procedures and policies created and presented a substantial and specific danger to the public health or safety. Plaintiff refused to participate in these violations and made complaints in good faith, which resulted in his termination.

61. As a result of these protected complaints and/or Plaintiff's refusal to participate in these unlawful activities, Defendants retaliated against Plaintiff by stripping away his duties and responsibilities by barring him from Metrology, creating adverse changes in Plaintiff's employment by increasingly requiring him to perform additional duties outside the scope of his job, harassing Plaintiff out of belief that he would report Defendants for their noncompliance with government agency rules and regulations, and finally, terminating Plaintiff.

62. On July 28, 2022, Defendants retaliated against Plaintiff by terminating him as a result of his complaints pertaining to Defendants' blatant violation of laws, rules, policies, and regulations. Thus, Plaintiff's actions constituted protected activity, and his termination contravenes whistleblower protection afforded by § 740 of New York Labor Law.

63. Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

64. Plaintiff brings this action individually and as class representative on behalf of himself and all other current and former exempt employees who have been or were employed by Defendants since October 2016 to the entry of judgment in this case (the "Collective Action Period"), and who failed to receive wages or overtime compensation at the rate of time and one-half for all hours worked in excess of forty (40) per week (the "Collective Action Members").

65. Upon information and belief, the collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) Collective Action Members who worked for the Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

66. Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

67. This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

68. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

69. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

70. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants has acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

    a. Whether the Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

    b. Whether the Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff and the Collective Action Members;

    c. What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

    d. Whether Defendants unlawfully failed to pay Plaintiff and the Collective Action Members minimum wage for all hours worked in excess of forty (40) hours each week, resulting in the denial of the legally-required minimum wages for all hours worked for all hours worked in excess of forty (40) hours per week in violation of the FLSA.

    e. Whether the Defendants unlawfully failed to pay Plaintiff and the Collective Action Members overtime compensation at the statutory rate of time and one-half for all hours worked in excess of forty (40) per week in violation of the FLSA.

f. Whether the Defendants' violations of the FLSA are willful as those terms are used within the context of the FLSA; and,

g. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

h. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

71. Plaintiff and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

72. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil procedure ("F.R.C.P.") Rule 23, on behalf of all exempt persons employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

73. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable form the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

74. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a Class will benefit the parties and the Court although the precise number of such persons is unknown because the facts on which the calculation of that

number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

75. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

76. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

77. A class action is superior to other available methods for the fair and efficient adjudication of the controversy - particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class' action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interest will be served by addressing the matter as a class action. The adjudication of individual litigation claims

would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications. With respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members', rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this as a class action.

78. Defendants and other employees throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

79. There are questions of law and feet common to the Class which predominate over any questions affecting only individual class members, including:

   a. Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

   b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not classify and pay the Class members properly;

c. At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class Members for their works;

d. Whether Defendants provided Plaintiff and the Class with adequate minimum wage for all hours worked in excess of forty (40) hours each week in accordance with NYLL;

e. Whether Defendants provided Plaintiff and the Class with a spread time premium for hours worked above ten (10) as required by NYLL; and

f. Whether Defendants properly notified Plaintiff and the Class Members of their hourly rate and overtime rate.

## STATEMENT OF CLAIM

### COUNT I

### [Violation of the Fair Labor Standards Act]

80. Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "79" of this Complaint as if fully set forth herein.

81. At all relevant times, upon information and belief, Defendants ALTAIRE, TERRY SAWAYA, MICHAEL SAWAYA, and ASSAD S. SAWAYA are and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

82. At all relevant times, Defendant employed Plaintiff within the meaning of the FLSA.

83. At all relevant times, Defendant had gross revenues excess of $500,000.

84. Plaintiff was entitled to be paid minimum wage.

85. Plaintiff was entitled to be paid at the statutory rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

86. Defendants failed to pay Plaintiff overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

87. At all relevant times, Defendants had, and continues to have a policy and practice of refusing to adhere to minimum wage requirements for hours worked over forty (40), and fail to offer overtime compensation at the statutory rate of time and one-half to Plaintiff for all hours worked in excess of forty (40) hours per work week, violating the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(l) and 215(a). Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff minimum wages, and overtime at the statutory rate of time and one-half for all hours worked in excess of forty (40) hours per week. Defendants knew or should have known such was due and that non-payment of minimum wages and overtime compensation would financially injure Plaintiff.

88. As a result of the Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiff, the Defendants has failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201, et seq., including 29 U.S.C. §§ 21 l (c) and 215(a).

89. Defendant failed to properly disclose or apprise Plaintiff of their rights under the FLSA.

90. As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff is entitled to liquidated damages pursuant to the FLSA.

91. Due to the intentional, willful, and unlawful acts of the Defendants, Plaintiff suffered damages consisting of unpaid wages, unpaid minimum wages, unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

92. Plaintiff is entitled to an award of his reasonable attorneys' fees, costs, and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II

### [Violation of the New York Labor Law]

93. Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "92" of this Complaint as if fully set forth herein.

94. At all relevant times, Defendants employed Plaintiff within the meaning of New York Labor Law §§ 2 and 651.

95. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff wages in the lawful amount for hours worked.

96. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff minimum wages for hours worked above forty (40) hours in a workweek.

97. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff overtime compensation at rates of not less than time and one-half for each hour worked in excess of forty (40) hours in a workweek.

98. Defendants failed to furnish Plaintiff with an accurate statement with every payment of wages listing gross wages, deductions, and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations §§ 142-2.7.

99. Defendants failed to furnish accurate wage notices in violation of the NYLL.

100.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State

101.    Defendants failed to pay Plaintiff his required wages weekly pursuant to N.Y. Lab. L. § 191(1)(a).

102.    Defendants unlawfully terminated Plaintiff on July 28, 2022, contravening whistleblower protection afforded by § 740 of New York Labor Law.

103.    Due to the Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants their unpaid wages, unpaid minimum wages, unpaid overtime compensation, unpaid "spread of hours" premium for each day they worked in excess of ten (10) hours, failure to issue accurate wage statements, failure to issue wage notices, failure to issue wage theft notice, damages for retaliation, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) et al. and § 198.

104.    Plaintiff is also entitled to liquidated damages pursuant to New York Labor Law § 663(1).

## COUNT III

### Retaliation Pursuant to New York Labor Law §740

105.    Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "104" of this Complaint as if fully set forth herein.

106.    New York Labor Law "NYLL" §740 prohibits employers from retaliating against employees who disclose or threaten to disclose to a "supervisor or public body" that the employer is in violation of a "law, rule, or regulation which violation creates a substantial and specific danger to the public health of safety…"

18

107.   NYLL §740 further prohibits employers to retaliate against any employee who objects to, or refuses to participate in any such activity, policy, or practice in violation of a law, rule or regulation.

108.   Defendants knowingly and willfully violated NYLL §740(2)(a) & §740(2)(c) by retaliating against Plaintiff, after Plaintiff made numerous internal complaints about company violations that posed a substantial and specific danger to health and safety both of the public and internal employees, and Plaintiff refused to participate in activities, policies or practices in violation of a law, rule or regulation.

109.   Consequently, Plaintiff is entitled to front pay, lost wages, benefits, and other remuneration, payment of a civil penalty of up to $10,000, and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, GUECI, on behalf of himself and all others similarly situated, respectfully request that this Court grant the following relief:

a) Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

b) Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs and Class Members;

c) A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States, FLSA and New York State laws;

d) All damages that Plaintiff and FLSA Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff and FLSA Plaintiffs would have received but for the Defendants' unlawful payment practices including unpaid wages, unpaid minimum wage, unpaid overtime wages, and spread of hours compensation among those alleged herein;

e) Liquidated damages and any other statutory and civil penalties as recoverable under the FLSA and NYLL;

f) Awarding Plaintiff and FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, other costs, and an award of a service payment to Plaintiff;

g) Pre-judgment and post-judgment interest, as provided by law;

h) Costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and,

i) Granting Plaintiff and FLSA Plaintiffs other and further relief as this Court finds necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues.

Dated: October  20 , 2022,

Commack, New York

By:     /s/*Aneeba Rehman*

Aneeba Rehman
Nadia M. Pervez
Attorneys for Plaintiff
Pervez & Rehman, P.C.
6268 Jericho Turnpike,
Suite 8,
Commack, NY, 11725
(631) 427-0700
arehman@pervezrehman.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JUSTIN GUECI, on behalf of himself,
FLSA Collective Plaintiffs and the Class Members,

                               Plaintiffs,                    Docket No.:

          -against-                               VERIFICATION

ALTAIRE PHARMACEUTICALS, INC., TERRY SAWAYA,
MICHAEL SAWAYA, and ASSAD S. SAWAYA

                              Defendants.

------------------------------------------------------------------------X

STATE OF NEW YORK  )

ss.: COUNTY OF SUFFOLK)

I, JUSTIN GUECI, am the Plaintiff in the within action for. I have read the foregoing Complaint and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.


_____
JUSTIN GUECI

Sworn to before me on this ___7___ day of ___October_____,
2022.


_____
Notary Public

## CONSENT TO SUE UNDER FAIR LABOR STANDARDS ACT

I, JUSTIN GUECI, am an employee formerly employed by ALTAIRE PHARMACEUTICALS, INC. I consent to be a plaintiff in the above captioned action to collect unpaid wages, unpaid overtime pay, unpaid minimum wages, and unpaid spread of hours premium.

Dated: _____Suffolk County_____, New York

October __7__, 2022

_____Justin Gueci_____
**JUSTIN GUECI**

Sworn to before me on this __7__ day of _____October_____, 2022.

_____Lesli Vohwinkel_____
Notary Public

LESLI VOHWINKEL
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Suffolk County
01VO6405222
MY COMMISSION EXPIRES 03/02/2024